## TUCKER v EATON

Docket No. 77860. Decided October 3, 1986. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave, reversed in part the judgment of the Court of Appeals denying the defendant's motion for accelerated judgment and remanded the case to the circuit court for further proceedings.

Kathleen A. Tucker, as administratrix of the estate of Edward J. Tucker, deceased, brought an action in the Wayne Circuit Court against Edward E. Eaton, alleging assault and battery and the wrongful death of the decedent following a stabbing in a bar. A second amended complaint named Detroit General Hospital as an additional defendant, alleging malpractice in the treatment of the decedent. Following the hospital's failure to answer, the plaintiff filed a default. The City of Detroit, on behalf of the hospital, moved to set aside the default and quash service and the second amended complaint, and for accelerated judgment, asserting that the period of limitations for medical malpractice actions had expired. The court, Roland L. Olzark, J., denied the motion to set aside the default. The Court of Appeals, D. E. HOLBROOK, P.J., and T. M. BURNS and CAPRATHE, JJ., reversed, finding that although the plaintiff failed to effect service of process upon the city in the manner prescribed by court rule, the city was estopped from asserting improper service because it had established a systematic alternative method for accepting service with which the plaintiff had complied. It held that the default should have been set aside, but ruled that the city's motion for accelerated judgment should have been denied (Docket No. 74924). The city applies for leave to appeal.

In an opinion per curiam, signed by Chief Justice WILLIAMS and Justices BRICKLEY, CAVANAGH, BOYLE, and RILEY, the Supreme Court *held:*

A case of estoppel is not made out where there is no showing that the party asserting estoppel had knowledge of the action or inaction of the party being estopped. In this case, there is no evidence that a proper city official had notice of the lawsuit within the limitation period or that a conscious decision was

made to delay the raising of the defect in service until after the limitation period had run.

Reversed and remanded.

Justices LEVIN and ARCHER would grant leave to appeal.

147 Mich App 363; 383 NW2d 203 (1985) reversed.

*Lakin, Worsham & Victor, P.C.* (by *Larry A. Smith*), for the plaintiffs.

*Law Offices of James S. Goulding, P.C.* (by *Gregory W. Finley*), for the defendants.

PER CURIAM. The Court of Appeals has ruled that defendant City of Detroit is estopped from denying service of process in this case. We hold that plaintiffs have failed to make out a case of estoppel. We reverse the judgment of the Court of Appeals in part and remand the case to the Wayne Circuit Court for further proceedings not inconsistent with this opinion.

I

On September 10, 1980, plaintiff Kathleen Tucker, as administratrix of the estate of Edward J. Tucker, filed a complaint against defendant Edward Eaton, alleging assault and battery and wrongful death in the stabbing of plaintiff's decedent. The complaint alleges that the stabbing occurred at a bar in Detroit on December 16, 1978. Mr. Tucker languished until he died of his wounds January 9, 1979. Defendant Eaton never answered the complaint.

On December 16, 1980, plaintiff filed a first amended complaint alleging dramshop actions[1] against two bars and their operators. These claims were later settled.

On January 6, 1981, plaintiff Tucker filed a

_____
[1] MCL 436.22; MSA 18.993.

second amended complaint.[2] The second amended complaint added Count IV and named Detroit General Hospital[3] as an additional defendant. Count IV alleged medical malpractice contributing to Mr. Tucker's death. This case is concerned with Count IV and those aspects of Counts V and VI which relate to defendant city.

The return of service of the second amended complaint was filed January 8, 1981. The deponent indicated that the summons and complaint were served on "Detroit General Hospital Administrative Secretary." The settled statement of facts identifies this secretary as Ella Alston.[4]

On June 26, 1981, by leave granted, plaintiff Tucker filed a third amended complaint adding Counts V and VI which alleged causes of action for

[2] No answer had been received to the prior complaints as of the filing of the second amended complaint. Plaintiff did not seek leave of the Court before filing the second amended complaint. See former GCR 1963, 118.1, currently MCR 2.118(A).

[3] Plaintiff does not dispute the city's representation that Detroit General Hospital was not a separate corporate entity, but merely a facility operated by the City of Detroit. The Court of Appeals directed the circuit court to allow amendment of the pleadings to name the proper defendant. The city does not claim error on this basis at this level. We shall refer to the City of Detroit and Detroit General Hospital as defendant in the rest of this opinion.

[4] Ms. Alston was deposed by plaintiff. During the time in question, she was secretary to the hospital controller, Stanley Rich, who was also deposed. They stated that the hospital was in the process of closing down from June 1980 through February 1981. Ms. Alston remembered receiving from thirty-five to fifty requests for medical records daily. Ms. Alston turned the requests over to the medical records supervisor. She did not remember receiving any summons or complaint. In answer to a hypothetical question, she said that if she had received a legal document that she did not know how to process, she would have given it to Mr. Rich. Ms. Alston further indicated that the controller's office was not labeled by any sign and that it was the third in a series of three business-related offices situated on a corridor leading from an entrance to the hospital. The office was not generally open to the public.

Mr. Rich did not remember receiving any summons or complaint. If he had noticed receiving any, he would have turned them over to the city law department. He indicated that during the close-out period, his hospital received ten to fifteen requests for records daily, which were turned over to a reduced records staff.

herself and for Edward W. Tucker, decedent's son. Peculiarly, the third amended complaint fails to list Detroit General Hospital as a defendant; nor does it make direct reference to Detroit General Hospital. However, it incorporates by reference Count IV of the second amended complaint.

On May 13, 1982, plaintiff filed a default against Detroit General Hospital accurately reciting that Detroit General Hospital had failed to appear, answer, or file a motion in lieu of an answer. On May 11, 1982, counsel for plaintiff sent a letter to an assistant corporation counsel for the City of Detroit giving notice of the default against Detroit General Hospital.[5] On July 12, 1982, counsel for plaintiff mailed a copy of the summons and second amended complaint to the City of Detroit, Law Department. On September 8, 1982, counsel for plaintiff mailed a copy of the second amended complaint to present counsel for the City of Detroit, followed by a copy of the summons on September 28, 1982.

On April 26, 1983, the City of Detroit appeared and filed motions on behalf of Detroit General Hospital to set aside the default, to quash service, and to quash the second amended complaint. The motions were adjourned to allow discovery as to service of process. The city filed a motion for accelerated judgment, raising the statute of limitations[6] on behalf of both the city and the hospital. On August 19, 1983, the circuit court denied the motion to set aside the default, rendering the

---

[5] The Certified Concise Statement of Facts indicates that plaintiff offered to set aside the default if the city would answer. A copy of the letter is not in the file. We do not know if the letter required defense on the merits or would have permitted raising a defense under the statute of limitations.

[6] The period of limitations for medical malpractice is two years, MCL 600.5805; MSA 27A.5805. But see *Hawkins v Regional Medical Laboratories, PC,* 415 Mich 420; 329 NW2d 729 (1982).

other motions moot. The order was entered on September 6, 1983.

The City of Detroit applied to the Court of Appeals for leave to appeal, which that Court granted. The city argued that the circuit court should have set aside the default and granted accelerated judgment. The Court of Appeals agreed that the default should have been set aside. However, it ruled that the city's motion for accelerated judgment should have been denied. 147 Mich App 363; 383 NW2d 203 (1985).

The city has filed a timely application for leave to appeal with this Court.

II

The Court of Appeals decision to deny accelerated judgment turns on the propriety of service of process on Ms. Alston. That service occurred on January 8, 1981, within two years of Mr. Tucker's death on January 9, 1979. If that service was proper, then the period of limitation had not expired.[7]

Former GCR 1963, 105.6,[8] in effect at the time, indicated:

Service of process upon public, municipal, quasi-municipal, or governmental corporations, unincorporated boards, or public bodies, may be made by leaving a summons and a copy of the complaint with

*  *  *

(2) the mayor, city clerk, or city attorney, in the case of cities . . . .

Service must be made upon one of the listed

[7] See n 6.

[8] MCR 2.105(G) currently contains a similar requirement.

officials, *Brooke v Brooke,* 272 Mich 627; 262 NW 426 (1935). Ms. Alston does not hold any of the listed offices.

The Court of Appeals held that the facts of this case created an exception to the requirements of former GCR 1963, 105.6:

> Nonetheless, we find that plaintiff's failure to serve the city in the manner required by the court rule was not fatal, because service in this case falls within an exception to that rule. The exception is that a defendant who has established a systematic alternative method of accepting service of process is estopped from asserting that service in accordance with that method was improper. This exception was recognized in dicta in *Fulton [v Citizens Mutual Ins Co,* 62 Mich App 600, 604; 233 NW2d 820 (1975)]:
>
> "Plaintiff contends that the defendant has established a systematic method of accepting service of process through its receptionist-telephone operator and has led the public in general and process servers in particular to believe that valid service is accomplished by leaving the specific documents in the possession of this agent of the defendant. There was insufficient time to conduct discovery to determine whether the switchboard operator actually had the authority to accept service. Substantiating this allegation, however, is the fact that the defendant in the instant case was also the defendant in *Guastello [v Citizens Mutual Ins Co,* 11 Mich App 120; 160 NW2d 725 (1968)], and there it was also represented by counsel that 'an employee' of the company accepted service." 62 Mich App 606-607.

Plaintiff in the present case cites at least 13 instances since 1975 wherein the hospital was named as a defendant and service of process was made and accepted by administrative personnel at the hospital. Plaintiff claims that 11 of these 13 cases were defended on the merits. We also note that there was evidence in the present case that

the hospital received and accepted numerous subpoenas for medical records which were served upon administrative personnel. This further buttresses plaintiff's argument that the city established a systematic alternative method of accepting service, both as to the service of summons and complaints and the service of subpoenas for medical records. Because of this established system of accepting service, we find that the city is estopped from asserting that service on administrative personnel at the hospital was improper. We thus conclude that the court had in personam jurisdiction over the city. See *Dogan v Michigan Basic Property Ins Ass'n,* 130 Mich App 313, 318; 343 NW2d 532 (1983). [147 Mich App 370-371.]

The Court of Appeals analysis has two flaws. First, a case of estoppel is not made out where there is no showing that the party asserting estoppel had knowledge of the action or inaction of the party being estopped. Second, in contrast to the cited cases, there is no evidence that a proper official had notice of the action within the limitation period.

A

In *Fulton v Citizens Mutual Ins Co,* 62 Mich App 600; 233 NW2d 820 (1975), plaintiff Fulton's residence suffered a fire. Defendant insurer refused to reimburse the loss. Plaintiff Fulton filed a complaint eight months after the fire and served process on the receptionist-switchboard operator at the defendant's office. Defendant insurer admitted it had timely knowledge of the action. After the insurance policy's limitation period had run, the insurer filed a motion for accelerated judgment alleging that there was no effective service within the limitation period. Plaintiff Fulton argued that the defendant insurer had established an alternate

means of accepting service through a receptionist-stenographer. The Court of Appeals did not accept this argument, noting that the authority of the receptionist-stenographer to accept service had not been established because of lack of discovery. The Court concluded that the issue of proper service was irrelevant. It found the defendant insurer estopped to assert the limitations period because it waited until after the period had expired to file its motion for accelerated judgment.

In *Dogan v Michigan Basic Property Ins Ass'n,* 130 Mich App 313; 343 NW2d 532 (1983), a fire occurred in property owned by plaintiff Dogan and insured by defendant. After denial of a prompt claim, plaintiff filed suit. The process server averred that defendant's receptionist directed him to Sharon Smith as the "person designated to accept such service," 130 Mich App 316. Ms. Smith was served with the summons and complaint. Copies were also mailed to defendant insurer's office. Defendant insurer failed to answer. The trial court granted a motion for default. Defendant insurer moved to set aside the default. The trial court denied that motion and rehearing. The Court of Appeals affirmed, stating:

> In *Wilson v California Wine Co,* 95 Mich 117; 54 NW 643 (1893), wherein plaintiff's process server was directed by an officer of defendant company to serve another individual, by stating that the individual was the person to be served with the summons, and this evidence was uncontradicted, the Michigan Supreme Court held that defendants were estopped from denying that service was proper under the circumstances.
>
> In the present case, we find *Wilson, supra,* is applicable. Thus, we find that the defendant is estopped from raising the defense of improper service due to its representation to plaintiff's proc-

ess server that valid service was accomplished by leaving the summons and copy of the complaint with its clerk, Sharon Smith. Plaintiff has presented sufficient evidence to sustain a conclusion that the defendant caused the plaintiff to detrimentally rely upon the validity of the service. [130 Mich App 318.]

In *Wilson, supra,* the process server was told by William Cunningham, secretary-treasurer-general manager of defendant company, and Lawrence J. Quinn, one of its stockholders, that James Quinn was the president of the company. Process was served on both Quinns. Defendants argued that James Quinn was not the company's president and that service on the company had not been achieved. This Court stated, "[A] more complete estoppel in fact could not be shown . . . ." 95 Mich 120.

## B

"[I]t is the general rule that exceptions to statutes of limitation are to be strictly construed." *Mair v Consumers Power Co,* 419 Mich 74, 80; 348 NW2d 256 (1984). *Fulton* and *Dogan* each relied on the doctrine of estoppel. Long ago Justice COOLEY explained:

The doctrine of estoppel rests upon a party having directly or indirectly made assertions, promises or assurances upon which another has acted under such circumstances that he would be seriously prejudiced if the assertions were suffered to be disproved or the promises or assurances to be withdrawn. But as the doctrine when applied operates to take away legal rights, it is no more than common justice to require that the facts which are supposed to call for its application shall be unquestionable, and the wrong which is to be prevented

shall be undoubted. [*Maxwell v Bay City Bridge Co,* 41 Mich 453, 467-468; 2 NW 639 (1879).]

More recently, Justice COLEMAN wrote for the Court:

> Generally, to justify the application of estoppel, one must establish that there has been a false representation or concealment of material fact, coupled with an expectation that the other party will rely upon this conduct, and knowledge of the actual facts on the part of ,the representing or concealing party. [*Lothian v Detroit,* 414 Mich 160, 177; 324 NW2d 9 (1982).]

In this case, there appears to be no indication that plaintiff was misled by any representation or concealment of fact by defendant. Plaintiff did not assert estoppel until August 18, 1983, on the basis of information gathered by an investigator for plaintiff's counsel on or after August 11, 1983. There is no indication that plaintiff or plaintiff's process server had this information or relied on it on January 8, 1981, the date of service on Ella Alston.[9] Thus there is no showing of detrimental reliance.

---

[9] The investigator's affidavit indicates she found seventy-five Wayne Circuit Court files naming Detroit General Hospital as a defendant from 1975 to 1980. She stated that thirteen files contained returns indicating service on administrative personnel of *Detroit General Hospital.* There is no indication whether appropriate city officials were otherwise served. Copies of some of the materials from the files are attached to the investigator's affidavit. In no instance was service made upon Ella Alston. In no case was service made by plaintiff's process server. Two of the sets of materials are not analogous. Of the remaining eleven, service was made six times upon Geraldine Green, secretary to the commissioner's office; three times upon Betty Edgecomb, secretary to the director; once upon the hospital director, personally; and once upon an assistant administrator, personally. In his deposition, hospital controller Rich identified Ms. Green, Ms. Edgecomb, and Mr. Himmelsbach as working in the same office at the "Administrative Seat" of the hospital.

C

The Court of Appeals in this case said it relied on dicta in *Fulton.* Actually, it relied on a summary of an argument of a party rejected by the *Fulton* panel. The only dicta in *Fulton* recognizing an exception to the statute of limitations is:

> While in dictum, this Court agrees that the defendant's knowledge of the defective service and its failure to file a motion to quash, waiting instead until the expiration of the 12-month period, estops the company from asserting the same, this Court has ruled to the contrary. *Mason v Letts* [14 Mich App 330; 165 NW2d 481 (1968).] [62 Mich App 608.]

This case is distinguished[10] from *Fulton* because plaintiff has failed to establish that defendant waited until the limitation period had expired with knowledge of defective service. The parties are satisfied that Ms. Alston received the summons and complaint. Ms. Alston said she did not remember the documents and she did not demonstrate knowledge of the significance of documents of this sort at her deposition. Plaintiffs have not established that any person with authority to act for defendant in this type of matter had knowledge of the lawsuit or that defendant made a conscious decision to delay raising the defect in service until after the limitation period had run.[11]

Pursuant to MCR 7.302(F)(1), in lieu of granting

[10] We do not comment on whether these dicta were correct. See *Roberts v Auto-Owners Ins Co,* 422 Mich 594; 374 NW2d 905 (1985).

[11] Plaintiff asserts that defendant answered and defended on the merits eleven of the thirteen cases described in n 9. This is similar to the argument of plaintiff in *Fulton* summarized by the Court of Appeals in that case but not adopted, even in dicta. If anything, the action of the city in the eleven cases was consistent with the duty described in the *Fulton* dicta, quoted in the text above. The city

leave to appeal, we reverse that portion of the Court of Appeals judgment which denies defendant's motion for accelerated judgment. We remand the case to the Wayne Circuit Court for further proceedings not inconsistent with this opinion. In all other respects, the application for leave to appeal is denied.

WILLIAMS, C.J., and BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ., concurred.

LEVIN and ARCHER, JJ. We would grant leave to appeal to decide the questions presented following briefing and argument by the parties.

apparently answered those cases of which it had timely notice, rather than waiting to ensnare the unwitting plaintiff. The city's willingness to defend suits of which it has timely notice should not be punished by default in a case of which it had no timely notice, absent clear grounds for estoppel. Moreover, to the extent that any practice is shown by the city's defense of those cases, the practice deals only with service on the hospital's main administrative office, not the controller's office.